Argued and submitted June 15, 2006, reversed and remanded June 20,
both petitions for review denied October 4, 2007 (343 Or 223)

Kristina A. FOX,
*Plaintiff-Appellant,*

*v.*

Michael COLLINS, M.D.
and Legacy Good Samaritan Hospital and Medical Center,
*Defendants,*

*and*

VALLEYLAB, INC.
and Genzyme Corporation,
fka Snowden Pencer, Inc.,
*Defendants-Respondents.*

Multnomah County Circuit Court
031011107; A127375

162 P3d 998

Robert K. Udziela argued the cause and filed the briefs for appellant.

Susan D. Marmaduke argued the cause for respondent Genzyme Corporation. With her on the brief was Harrang Long Gary Rudnick PC.

Margaret Hoffmann, Stephen C. Bush, and Schwabe, Williamson & Wyatt, P.C. filed the brief for respondent Valleylab, Inc.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Plaintiff appeals from a limited judgment dismissing for a second time her product liability claims against defendants Genzyme Corporation and Valleylab, Inc. Plaintiff, whose claims against those defendants had previously been dismissed as time barred, refiled her claims under a special "revival" statute enacted by the legislature in 2003. The trial court concluded that that statute was unconstitutional and dismissed plaintiff's claims against defendants with prejudice. We reverse and remand.

Before relating the facts of this case, a brief discussion of the evolution of the statute of limitations for product liability claims is helpful. The limitations period for bringing product liability claims is set forth in ORS 30.905(2). Prior to changes made by the 2003 Legislative Assembly (discussed below), that statute provided, in part, that "a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs." ORS 30.905(2) (2001). On June 8, 2001, the Oregon Supreme Court held that the two-year limitation period contained in ORS 30.905(2) (2001) began to run when the "death, injury or damage complained of" occurred, regardless whether the plaintiff discovers the harm within that two-year period. *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 234, 26 P3d 817 (2001) (internal quotation marks omitted). Consequently, actions filed after *Gladhart* were time barred if they were not brought within two years of the date of injury, even if the plaintiff could not have discovered the injury within that time.

In 2003, in response to *Gladhart*, the legislature enacted HB 2080, which, among other things, established that the statute of limitations for a product liability civil action for personal injury or property damage begins to run when the plaintiff first discovers or, in the exercise of reasonable care, should have discovered that the injury or other damage complained of exists and was the result of a product defect. Or Laws 2003, ch 768, § 1. Specifically, section 1 of the bill amended ORS 30.905(2) to read:

"Except as provided in ORS 30.907 and 30.908 (1) to (4), a product liability civil action for personal injury or property damage must be commenced not later than the earlier of:

"(a) Two years after the date on which the plaintiff *discovers, or reasonably should have discovered,* the personal injury or property damage and the causal relationship between the injury or damage and the product, or the causal relationship between the injury or damage and the conduct of defendant; or

"(b) Ten years after the date on which the product was first purchased for use or consumption."

Or Law 2003, ch 768, § 1 (emphasis added). Section 2 of the bill (the revival statute) addressed the effective date of the changes; it also revived claims that had been previously dismissed as untimely. It provided:

"(1) Subject to the provisions of this section, the amendments to ORS 30.905 by section 1 of this 2003 Act apply only to deaths, personal injuries or property damage that occurs on or after the effective date of this 2003 Act.

"(2) The amendments to ORS 30.905 by section 1 of this 2003 Act revive a cause of action for which a civil action for death, personal injury or property damage was filed before the effective date of this 2003 Act if:

"(a) The civil action was filed within the time provided by ORS 30.905 as amended by section 1 of this 2003 Act;

"(b) The civil action was adjudicated based on the provisions of ORS 30.905 as in effect immediately before the effective date of this 2003 Act; and

"(c) A final judgment was entered in the civil action on or after June 8, 2001, and before the effective date of this 2003 Act.

"(3) A civil action based on a cause of action revived by subsection (2) of this section must be refiled within one year after the effective date of this 2003 Act."

Or Laws 2003, ch 768, § 2, *compiled as a note after* ORS 30.905 (2003). The effective date of the bill was January 1, 2004.

With that background in mind, we turn to the facts of this case, which are not in dispute. On October 5, 2000, plaintiff brought a complaint for medical malpractice against Dr. Michael Collins and Legacy Good Samaritan Hospital and Medical Center for injuries that allegedly arose out of a laparoscopic surgery performed on October 5, 1998.[1] On December 4, 2000, more than two years after the date of the alleged injury, plaintiff amended her complaint, adding product liability claims against defendants.

Defendants each subsequently moved for summary judgment, asserting that plaintiff's product liability claims were time barred under ORS 30.905(2) (2001). The court agreed and entered separate judgments for each defendant, dismissing with prejudice all of plaintiff's claims against them. Those judgments were entered on March 7, 2002, and May 7, 2002, respectively. Plaintiff did not appeal either judgment.

Plaintiff's claims against Collins and Legacy Good Samaritan Hospital were then voluntarily dismissed without prejudice pursuant to a "Stipulated Judgment of Dismissal and Order of Dismissal," filed by those parties and approved by the court on September 18, 2002.[2] The judgment dismissed the case without prejudice and set forth plaintiff's agreement with those defendants that she would be allowed to refile her complaint against them within certain time limits connected to the 2003 legislative session. The parties expressly agreed that the stipulated judgment would have the effect of a judgment of dismissal with prejudice if plaintiff did not refile within the time limits specified.

Plaintiff refiled her complaint on October 14, 2003, within the time constraints of the stipulated judgment, but before HB 2080 took effect. The complaint included the identical product liability claims against defendants that had earlier been dismissed by summary judgment; however, she did not serve that complaint on defendants. On December 4,

---

[1] The physician and the hospital are not parties to this appeal. Unless otherwise indicated, we refer to Genzyme Corporation and Valleylab, Inc., as "defendants" throughout the remainder of this opinion.

[2] The judgment did not identify defendants as parties and omitted them from the caption of the case.

2003, plaintiff filed a first amended complaint; she served defendants with that amended complaint on January 6, 2004.

On February 5, 2004, defendants moved for summary judgment against plaintiff, arguing that the legislature's attempt in 2003 to revive final judgments under ORS 30.905 violated the separation of powers doctrine of the Oregon Constitution and that claim preclusion therefore barred plaintiff from further litigating those claims. The trial court agreed that the revival statute was "an unconstitutional violation of separation of powers under Oregon law" and entered a limited judgment dismissing plaintiff's revived product liability claims against defendants with prejudice.[3] Plaintiff appeals from that judgment.

We review the trial court's grant of summary judgment for legal error. *Northwest Advancement v. Bureau of Labor*, 96 Or App 133, 145, 772 P2d 9, *rev den*, 308 Or 315 (1989), *cert den*, 495 US 932 (1990).

■   On appeal, plaintiff asserts that the trial court erred in holding the revival statute unconstitutional. She argues that the Oregon Supreme Court's decision in *McFadden v. Dryvit Systems, Inc.*, 338 Or 528, 112 P3d 1191 (2005), decided after the trial court's ruling on summary judgment in this case, firmly disposes of the constitutional issue in plaintiff's favor. In response, defendants argue that *McFadden* was incorrectly decided and, in any event, that the case is not controlling because its holding that the revival statute does not violate the separation of powers provision of the Oregon Constitution was "advisory" only and thus is merely *dictum*.

In *McFadden*, the plaintiffs attempted, under the authority of the revival statute, to revive their product liability claims against the defendant. Those claims had originally been removed from state court to the United States District Court for the District of Oregon and then dismissed as time barred under the version of ORS 30.905 then in effect. The

---

[3] The trial judge orally explained her ruling in these terms:

"I am going to grant the Motion for Summary Judgment. I am satisfied that the legislature simply cannot disturb the vested rights that were rendered by the final judgment in this case * * *."

defendant claimed that the Oregon legislature's revival of a dismissed product liability claim violated the separation of powers provisions of the Oregon Constitution. The federal court certified that question to the Oregon Supreme Court, which held that the 2003 amendments did not violate the separation of powers provisions in Article III, section 1, and Article VII (Amended), section 1, of the Oregon Constitution.[4] *McFadden*, 338 Or at 540-41. Relying on *State ex rel Huntington v. Sulmonetti*, 276 Or 967, 557 P2d 641 (1976), the court concluded, in part:

> "As in *Sulmonetti*, the 2003 amendment to ORS 30.095 reviving certain claims does not effectively set aside the courts' initial determination as to those claims. Those rulings remain final as to the law then existing. Rather, the amendment merely constitutes a legislative determination that the earlier version of the statute did not provide certain litigants with a fair opportunity to discover and pursue their claims. As was the case in *Sulmonetti*, it is undisputable that the legislature would have had the authority to include a 'discovery rule' in the product liability statute of limitations in the first instance. Accordingly, the legislature had the authority to do so by amendment to the earlier statute, to make the amendment retroactive, and to permit plaintiffs to refile their claims notwithstanding an earlier determination that their claims were untimely."

338 Or at 538.

In defendants' view, the Supreme Court's resolution of the separation of powers issue in *McFadden* is *dictum* because it involved the effect of a statute on the judgment of a *federal* court. According to defendants, it was therefore a matter of federal constitutional law and is not controlling here. We disagree. The federal court properly looked to the

---

[4] Article III, section 1, provides, in part:

"The powers of the Government shall be divided into three seperate [*sic*] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Article VII (Amended), section 1, provides:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law."

Oregon Supreme Court for its determination of the constitutionality of an Oregon statute under the Oregon Constitution. *A. K. H. v. R. C. T.*, 312 Or 497, 501, 822 P2d 135 (1991) ("[Supreme Court's] authority to consider a certified question under ORS 28.200 *et seq* depends on its being one concerning Oregon, not federal, law."); *Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 811 P2d 627 (1991) (explaining certification process). The Supreme Court's resolution of that question—that is, the validity of a *state* statute under the *state* constitution—is not "merely advisory," but a binding pronouncement of state law. In any event, the decision to revisit its opinions is the province of the Supreme Court, and therefore we decline defendants' invitation to undertake that task. For our purposes, *McFadden* controls this case. Hence, the trial court erred in granting summary judgment to defendants on the ground that the revival statute, Oregon Laws 2003, chapter 768, section 2, is a violation of separation of powers under the Oregon Constitution.

Defendants contend, however, that we should nonetheless affirm the trial court's judgment under the "right for the wrong reason" doctrine articulated in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). Defendants advance three alternative reasons for us to affirm the trial court on that basis. The first two implicate the statutory prerequisites for refiling claims. Specifically, defendants argue that plaintiff's claims do not qualify under the revival statute because (1) no "final" judgment was entered in plaintiff's original action before January 1, 2004; and (2) plaintiff refiled her claims in 2003, thus they were not filed "within one year after" January 1, 2004, as the statute requires. The final alternative reason defendants advance for affirming the trial court's judgment is that the revival statute is unconstitutional under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

We begin with defendants' statutory arguments. Plaintiff responds that, because defendants affirmatively represented to the trial court that plaintiff's refiled claims

were properly before the court,[5] defendants thus expressly waived their right to raise those arguments on appeal. At oral argument, plaintiff contended that defendants' position—that plaintiff's claims do not qualify for revival under the statute, either because no final judgment was entered previously, or because plaintiff refiled her claims too early— is essentially a statute of limitations defense and, as such, must be raised in the first instance in the trial court or it is waived.

Plaintiff is correct that a statute of limitations defense generally must be asserted in a motion to dismiss or included in a responsive pleading or it is waived.[6] ORCP 21 A; ORCP 21 G(2). The latter rule provides, in part:

> "A defense that * * * the action has not been commenced within the time limited by statute, is waived if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof."

Accordingly, we must first examine the revival statute to determine if it is a statute that limits the time within which an action must be brought. As noted, subsection (1) of that statute sets forth the general effective date for the new discovery rule. Specifically, it applies with respect to "deaths, personal injuries or property damage that occurs on or after" January 1, 2004. Or Laws 2003, ch 768, § 2(1). Subsection (2) then provides an exception to that rule and allows for the revival of claims for injuries occurring before January 1,

---

[5] In their motion for summary judgment, defendants stated, in part:

"All parties to this action must acknowledge that the claims asserted against Genzyme and Valleylab, Inc., are identical to those plaintiff filed in her previous lawsuit. All can also agree those claims were the subject of final judgments, dismissing them with prejudice, on the ground they were untimely under the law in effect at that time. * * *

"* * * * *

"The plain language of the statute appears to grant plaintiff legislative permission to re-litigate her product liability claims that have been resolved by final judgment. The legislature, however, has exceeded its authority in HB 2080 and has no power to enact retroactive legislation which forces the courts to reopen a case which has been finally adjudicated."

[6] A party may also obtain permission from the court to amend a pleading to assert the defense "upon a showing * * * that [the] party did not know and reasonably could not have known of the existence of the defense or that other circumstances make denial of leave to amend unjust." ORCP 21 G(2).

2004, under certain circumstances, namely, if (1) the original action was filed within the limitation period that would have applied had the discovery rule been in effect; (2) the claim was adjudicated based on the former two-year limitation of ORS 30.905; and (3) a "final judgment" in that action was entered between June 8, 2001 (the date of the *Gladhart* decision) and December 31, 2003. Or Laws 2003, ch 768, § 2(2). Finally, subsection (3) establishes that a cause of action otherwise revived by subsection (2) must be "refiled within one year after [January 1, 2004]." Or Laws 2003, ch 768, § 2(3).

The revival statute thus both defines and limits the period within which a revived claim under ORS 30.905 must be brought. Indeed, both the parties and the court refer to it as an amendment to ORS 30.905, which the Oregon Supreme Court has previously held includes a statute of limitations. *Sealy v. Hicks*, 309 Or 387, 392, 788 P2d 435, *cert den*, 498 US 819 (1990), *overruled in part on other grounds by Smothers v. Gresham Transfer*, 332 Or 83, 23 P3d 333 (2001) ("ORS 30.905(2) is a statute of limitations."). Although, to be precise, the revival statute did not directly amend ORS 30.905(2), it has the same effect. We conclude that the revival statute incorporates into ORS 30.905(2) the equivalent of a statute of limitations for the purpose of bringing a *revived* products liability claim. *Cf. Mendez v. Walker*, 272 Or 602, 604, 538 P2d 939 (1975) (statute authorizing continuance of action against personal representative of a decedent's estate within one year after death of decedent is the equivalent of a statute of limitations).

■ As such, defendants could properly raise plaintiff's failure to satisfy the statute as an affirmative defense; however, they were required to do so by pleading it in their answer or by moving to dismiss on that basis.[7] Because defendants' motion for summary judgment sought dismissal solely on the basis of claim preclusion, we decline to consider

---

[7] A party may be excused from this requirement if the defense appears on the face of the complaint. *Hewitt v. Thomas et al*, 210 Or 273, 310 P2d 313 (1957); *Taylor v. Barbecue Time, Inc.*, 100 Or App 497, 499-500, 786 P2d 1303 (1990). Defendants do not assert that that is the case here.

defendants' statute of limitations argument as a basis to affirm the trial court.

■ Under *Outdoor Media*, we may—as a matter of discretion—affirm a trial court ruling on an alternative basis when certain conditions are met. 331 Or at 659-60. One of those conditions is that "the facts of record be sufficient to support the alternative basis for affirmance." *Id.* at 660. Here, because defendants did not assert a statute of limitations defense in their pleadings, the record before the trial court would not have supported a dismissal of plaintiff's claims on that basis. The court may not *sua sponte* consider a statute of limitations defense that is not pleaded. *See Francke v. Gable*, 121 Or App 17, 20, 853 P2d 1366 (1993) (trial court's dismissal of action on its own motion on basis of unasserted, waivable defense is plain error); *Palmer v. State of Oregon*, 121 Or App 377, 380, 854 P2d 955 (1993), *aff'd*, 318 Or 352, 867 P2d 1368 (1994) (declining to affirm post-conviction court's dismissal of plaintiff's petition for post-conviction relief on alternative basis that it was untimely where state waived statute of limitations by failing to raise it by answer or motion to dismiss the petition); *cf. Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 384, 8 P3d 200 (2000) (because defense of failure to state a claim under ORCP 21 G(3) is waivable by party's failure to timely assert it, the appellate courts will not consider legal sufficiency of claim on appeal unless such a challenge was raised at trial). We therefore reject defendants' statutory arguments as an alternate ground for affirmance.

■ We turn to defendants' remaining argument. Defendants assert that we should affirm the trial court on the ground that the revival statute violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution under the "vested rights" doctrine.[8] According to defendants, under that doctrine, because the judgments dismissing plaintiff's claims against them constitute vested property rights, and the statute deprives them

---

[8] The Due Process Clause of the Fourteenth Amendment provides, in part, that "[n]o State shall * * * deprive any person of life, liberty, or property, without due process of law[.]" Because the challenge here is to state legislative action, it, rather than the Fifth Amendment's Due Process Clause, is the applicable constitutional provision.

of those rights without due process of law, the statute is unconstitutional. Plaintiff counters, first, that the federal constitutional question cannot be raised on appeal because defendants did not develop the argument below. On the merits, plaintiff asserts that all defendants had was an expectation that the rules of claim preclusion would not change, which is an interest that is not subject to due process protection. Plaintiff also argues that, even if a property right in the previous judgments existed, the statute does not violate due process because it is a rational response to a legitimate state interest.

■■   As an initial matter, we note that, because defendants propose their due process argument as an alternative basis for *affirmance*—and not as a ground for reversing the trial court's judgment—preservation is not necessarily an impediment to our consideration of that argument.[9] *Liberty Northwest Ins. v. Oregon Ins. Guarantee*, 206 Or App 102, 109, 136 P3d 49 (2006). We will not, however, consider an alternative ground for affirmance if the opposing party might have created a different record below had the issue been raised, and that record could affect the disposition of the issue. *Outdoor Media*, 331 Or at 660. Here, defendants' argument is purely a question of law, that is, whether the revival statute violates defendants' rights under the Due Process Clause; the facts are undisputed. Therefore, even if defendants had raised the issue below, it would not have affected the development of the factual record.

However, because we conclude, for the reasons that follow, that the revival statute does not violate the Due Process Clause, we nevertheless decline to affirm the trial court on this basis.

---

[9] In any event, although defendants' motion for summary judgment relied primarily on their argument that the revival statute violated the separation of powers provisions of the Oregon Constitution, in their reply memorandum in support of their motion, they also contended that it violated the United States Constitution, quoting *State v. Rudder / Webb*, 137 Or App 43, 52, 903 P2d 393 (1995) (Riggs, J., concurring), *rev'd on other grounds*, 324 Or 380, 927 P2d 79 (1996) (statute that retroactively conferred subject matter jurisdiction on a court that lacked such jurisdiction clearly "violates federal due process requirements"). Defendants also alerted the trial judge to that point at oral argument on the motion. Indeed, in granting defendant's motion for summary judgment, the trial court ruled: "I am satisfied that the legislature simply cannot disturb the vested rights that were rendered by the final judgment in this case * * *."

In *Sulmonetti*, the Oregon Supreme Court rejected the very theory that defendants now advance. 276 Or at 971-72. In that case, an injured worker filed a claim for workers' compensation benefits. The Workers' Compensation Board denied the claim on the basis that it had not been timely filed under the then-applicable statute of limitations, and we affirmed that decision. The worker subsequently refiled the identical claim. Before that claim was adjudicated, the legislature amended the statute of limitations in a manner that made the worker's claim timely and made the amendment retroactive to all claims for compensable injuries that arose before its effective date. The board denied the worker's claim on the ground that it was barred by the prior litigation; the circuit court disagreed and ordered the case remanded to the board. The employer sought a writ of mandamus, asking the Supreme Court to vacate the remand order. The Supreme Court framed the employer's argument as, among other things, whether the retroactivity provision of the statute violated due process because the employer had a vested property right in the result of the first litigation. The Supreme Court rejected that argument, stating:

> "This amounts to a contention that a constitutionally protected property right exists in the application of the court-made rule of res judicata. Courts enunciated the rule of res judicata, and they can therefore determine the circumstances in which the rule should be applied. This, in itself, is sufficient to demonstrate that the employer could not have a vested interest in an expected application of the rule."[10]

*Id.* at 971.

That conclusion was reinforced by the Oregon Supreme Court in *McFadden*. 338 Or at 537. As discussed, 213 Or App at 457, in that case the certified question before the court was whether the revival provision of HB 2080 violated the separation of powers provisions of the Oregon Constitution. However, in resolving that question, the court

---

[10] Because the Oregon Constitution contains no due process clause, *State v. Miller*, 327 Or 622, 635 n 10, 969 P2d 1006 (1998), the Supreme Court's decision was necessarily based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

affirmed the holding of *Sulmonetti* that a party cannot have a vested right in an expected application of the rule of *res judicata* and, therefore, that "legislative action abrogating the rule of *res judicata* in certain cases" does not offend due process. 338 Or at 537 (citing *Sulmonetti*, 276 Or at 971-72).

Defendants offer no basis on which to distinguish those holdings of *Sulmonetti* and *McFadden*; rather, defendants contend that they are inconsistent with controlling United States Supreme Court case law:

> "To the extent that plaintiff's characterization of the holdings of *McFadden* and *Sulmonetti* is correct, those decisions are clearly inconsistent with—and trumped by—the United States Supreme Court cases interpreting the United States Constitution. Regardless of whether parties have a vested right in consistent application of the judicially created doctrine of *res judicata*, federal constitutional law leaves no doubt that they have a vested right to be free of retroactive legislation which annuls or otherwise diminishes the value of a final judgment."

"In support of that argument, defendants rely primarily on *McCullough v. Virginia*, 172 US 102, 19 S Ct 134, 43 L Ed 382 (1898), often referred to as the source of the "vested rights" doctrine.[11] *See, e.g., Johnston v. Cigna Corp.*, 14 F3d 486 (10th Cir 1993), *cert den*, 514 US 1082 (1995). In *McCullough*, the Court stated: "Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb rights created thereby ceases." 172 US at 123-24. However, *McCullough* and the other United States Supreme Court cases cited by defendants all predate the Oregon Supreme Court's interpretation of the federal Due Process Clause in *Sulmonetti*. We are thus bound by our own Supreme Court's resolution of the issue. *See Miller v. Pacific Trawlers, Inc.*, 204 Or App 585, 131 P3d 821 (2006) (on question of federal law, we are bound by decisions of the United

---

[11] It also appears that it is the *only* occasion in which the Supreme Court has invalidated legislation under the vested rights doctrine. *See Pacific Mut. Life Ins. Co. v. First RepublicBank*, 997 F2d 39, 46 (5 Cir 1993), *aff'd by an equally divided court sub nom Morgan Stanley & Co., Inc. v. Pacific Mut. Life Ins. Co.*, 511 US 658, 128 L Ed 2d 654, 114 S Ct 1827 (1994) ("Our research indicates that the Court has never applied this holding in *McCullough* to decide another case.").

States Supreme Court, as well as by decisions of the Oregon Supreme Court). We conclude that, as in *Sulmonetti*, the revival statute did not, by retroactively amending the statute of limitations for product liability claims, offend the due process rights of defendants under the Fourteenth Amendment.[12]

In any event, we are not persuaded that the Oregon Supreme Court's determination in *Sulmonetti* is inconsistent with United States Supreme Court jurisprudence. In the century or so that has passed since *McCullough* was decided, the Court has retreated from any absolute rule regarding the sanctity of judgments under the Due Process Clause. *Fleming v. Rhodes*, 331 US 100, 67 S Ct 1140, 91 L Ed 1368, (1947), is particularly instructive in that regard. *Fleming* involved the effect of final state court judgments entitling landlords to evict certain tenants upon the lapse of wartime price regulations as affected by subsequent federal statutes that cured the lapse (extending the price regulations) and, at same time, prohibited the eviction of the tenants. The federal district court held that the statute violated the Fifth Amendment's Due Process Clause, but the Supreme Court reversed. The Court stated:

"Federal regulation of future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution. So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. Were it otherwise, the paramount powers of Congress could be nullified by 'prophetic discernment.' *The rights acquired by judgments have no different standing.*"

*Id.* at 107 (footnotes omitted; emphasis added). The Supreme Court thus made it clear that, despite *McCullough*, final

---

[12] We recognize that the United States District Court for the District of Oregon has reached the opposite conclusion on this precise issue. *McFadden v. Dryvit Systems, Inc.*, 2006 US Dist LEXIS 14726 (Mar 13, 2006). However, that court is not bound, as we are, by *Sulmonetti*. In all events, we do not, respectfully, find the district court's reasoning in that regard to be persuasive.

judgments can be upset by legislative action, at least under some circumstances, and still pass constitutional muster.

Reversed and remanded.