IN THE OREGON TAX COURT
REGULAR DIVISION

PUBLIC UTILITY DISTRICT NO. 1
OF SNOHOMISH COUNTY, WASHINGTON,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4560)

CITY OF SEATTLE,
by and through Seattle City Light,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4577)

CITY OF TACOMA,
Department of Public Utilities, Light Division,
dba Tacoma Power,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4578)

Timothy J. Sercombe and John E. Kennedy, Preston Gates & Ellis LLP, filed the cross motion for partial summary judgment* and argued the cause for Plaintiff Public Utility District No. 1 of Snohomish County, Washington.

James Stuart Smith and John A. Cameron, Davis Wright Termaine LLP, filed the cross motion for partial summary judgment and argued the cause for Plaintiffs City of Seattle, by and through Seattle City Light, and City of Tacoma, Department of Public Utilities, Light Division, dba Tacoma Power.

Marilyn J. Harbur and Melisse S. Cunningham, Assistant Attorneys General, Department of Justice, Salem, filed the cross motion for partial summary judgment and argued the cause for Defendant.

---

* The reference to cross motions for partial summary judgment is used although the motions were often referred to by the "phase" they occupied in this complex litigation.

Decision for Defendant rendered January 26, 2005. Other issues rendered moot by legislation. Stipulated Judgment of Dismissal filed January 31, 2006.

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

This matter is before the court on cross motions for partial summary judgment filed by Plaintiffs (taxpayers) and Defendant (the department). One prior set of cross motions for partial summary judgment and one motion by the department for partial summary judgment have been the subject of orders of the court.

## II. FACTS

In 2001, the department purported to assess and subject to property tax certain contractual rights owned by taxpayers that related to use of electric transmission facilities in the Northwest, or taxpayers' interest, if any, in that property (the subject of the assessment is referred to in this order as "the property"). In August 2001, the department issued an Opinion and Order asserting taxability of the property for the 2001-02 tax year. In September 2001, the department issued an Opinion and Order assessing the property as omitted property in respect of the tax years 1996-97 through 2000-2001 (the 2001 Omitted Property Assessment).

The 2001 Omitted Property Assessment was one of the subjects of an order of this court entered on January 27, 2004, after the first round of cross motions for partial summary judgment (the First Order). *PUD No. 1 of Snohomish County v. Dept. of Rev.*, 17 OTR 290 (2004). The parties disputed whether or not the department had the statutory authority under ORS 308.590 (2001)[1] to make omitted property assessments for tax years prior to the year for which the department, in its regular annual cycle, was taking action under the central assessment provisions of ORS 308.505 to 308.665. The court concluded that the department was not authorized to make such omitted property assessments, but

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2003 unless otherwise noted.

was only authorized to make additions of property omitted in the then current annual central assessment cycle.

During the oral argument relating to the First Order, the court requested supplemental briefing on the effect, if any, of the adoption of Oregon Laws 2003, chapter 31, section 1, legislation that amended ORS 308.590 (the 2003 Amendment).[2] The 2003 Amendment had been approved by both houses of the Legislative Assembly and had been signed by the Governor at the time of oral argument related to the First Order. The 2003 Amendment was not effective, however, until November 26, 2003.

During its first annual central assessment cycle following the effective date of the 2003 Amendment, *i.e.*, for the 2004-05 property tax year, the department issued Opinions and Orders under the authority of ORS 308.590, as amended by the 2003 Amendment, and assessed the property as omitted property for the tax years 1998-99, 1999-2000, and 2000-2001 (the 2004 Omitted Property Assessments). Those three tax years were three of the five years addressed in the 2001 Omitted Property Assessments.

Plaintiffs all filed appeals in respect of the 2004 Omitted Property Assessments. Those appeals were both specially designated to this division for hearing, and consolidated with the other pending cases. The cross motions considered here raise the question of the department's authority to issue the 2004 Omitted Property Assessments.

### III. ISSUE

Was the department authorized to issue the 2004 Omitted Property Assessments?

### IV. ANALYSIS

A. *Effect of 2003 Amendment*

Taxpayers first argue that the 2003 Amendment to ORS 308.590 does not cure the absence of authority for retrospective assessments that this court, in the First Order,

---

[2] Appendix A contains the language of the 2003 Amendment showing insertions and deletions made by it.

held existed under ORS 308.590 (2001). In the First Order, this court concluded that the text and context of ORS 308.590 (2001) indicated that the department's authority to add omitted property was limited to authority to add to a tentative roll, created under ORS 308.590 (2001), property that had not been included on the tentative roll prepared by the department and submitted to the director of the department for review.

■ The 2003 Amendment added language to the statute so that there is authority for assessment of property not assessed on "the assessment roll, or on any assessment roll for a year not exceeding five years prior to the last roll certified * * *." In that language, "the assessment roll" is a reference to the roll that this court held was the tentative assessment roll created annually in the process of central assessment. The language added by the 2003 Amendment that refers to "any assessment roll" for a five-year period must be given meaning and function in any construction of the statute. In the court's view, the legislature clearly thought it was changing the law by adding those words.[3]

The court sees no way to give meaning and function to the 2003 Amendment if the taxpayers' arguments are accepted. Taxpayers argue that the reference to "any assessment roll for a year not exceeding five years prior" is actually a reference only to tentative rolls that are or were created. That reading either does not give effect to the word "any" or adds the word "tentative" after the word "any." Taxpayers argue that is preferable to construing the phrase "any assessment roll" as including finalized rolls from past years. Taxpayers argue that a construction that refers to past year final rolls creates problems in reading ORS 308.605, ORS 308.610, and ORS 308.615.

Although some friction may exist with the department's construction of the 2003 Amendment, that friction is minor compared to the effect of the taxpayers' construction, which either reads the word "any" out of the amendment or adds an adjective not found in the 2003 Amendment. The

_____

[3] In the First Order, the court rejected the department's argument that the 2003 Amendment was merely codification of existing law.

construction offered by taxpayers is also completely at odds with the legislative history of the 2003 Amendment. That history indicates that the legislature responded to a department request to either create or confirm the power of the department to make retrospective assessments of omitted property.[4] The legislature did not leave matters unchanged.

B.   *No Omitted Property*

Taxpayers next address the fact that the 2003 Amendment only refers to omitted property. Taxpayers beginthis argument with the premise that under the 2003 Amendment the department was intended to have the same powers as the county assessors.[5] The next premise of the argument is that the county assessors, and therefore the department, have no authority to add, as omitted, any property that the department or assessor knew existed but chose not to assess. Taxpayers then conclude that because the department knew of taxpayers' capacity contracts long before 2004, but chose not to assess them, the department cannot treat any such property as omitted.

■    Taxpayers' position is not well taken. First, ORS 308.590 specifies that *any* property omitted from any roll within the specified period can be assessed by the department. No statutory provision in the central assessment statutes limits the department in the way suggested by taxpayers. Second, even if, in analyzing the department's authority, one analogizes to the power of county assessors specified in ORS 311.205 and ORS 311.216, the law is clear that omitted property may be added without regard to the reason for the omission. Taxpayers point to language in *Miller v. Dept. of Rev.*, 16 OTR 4, 8 (2001), describing the statutes for assessors as permitting addition to the rolls of property inadvertently omitted. That statement was illustrative, and not exclusive, as can be seen from the fact that immediately prior to that statement the court observed, with emphasis, that property omitted *for any reason* can be added to the rolls under ORS 311.205 and ORS 311.216. *Id.*

---

[4] The court's view is that the authority was created. The department's view has been that the authority was confirmed.

[5] In the view of taxpayers, the support for this premise is found in the legislative history of the 2003 Amendment.

## C. *Claim Preclusion*

Taxpayers next argue that insofar as the 2004 Omitted Property Assessment was addressed to tax years subject to the First Order, the claim by the department to assess property in those years is barred by the doctrine of claim preclusion. Taxpayers assert that the First Order held that the department did not have authority to assess the property in the 2001 Omitted Property Assessment and that that conclusion precludes the subsequent "claim" by the department in the 2004 Omitted Property Assessment at least as to the years subject to both department assessments.

■ In the First Order, this court concluded that in 2001 the department had no authority to retrospectively assess. Even if the First Order was sufficiently final as to be potentially preclusive,[6] the law in Oregon is that a judgment on one claim does not preclude a later claim where there has been a change in law. *State ex rel Huntington v. Sulmonetti*, 276 Or 967, 557 P2d 641 (1976). Here such change of law has occurred in the 2003 Amendment. To the extent that assessments constitute claims for these purposes, the 2004 Omitted Property Assessments were made under a 2003 statute and not under the 2001 statute litigated in the First Order. The 2004 Omitted Property Assessments are not precluded by the First Order.

## D. *Retroactivity*

Taxpayers next object to the retrospective or retroactive features of the 2003 Amendment and the 2004 Omitted Property Assessment issued thereunder.[7] None of the taxpayers argues that the Oregon legislature violated any relevant constitutional limitation in connection with the 2003 Amendment, if, as decided here, the 2003 Amendment authorized the department action now at issue. Instead the

---

[6] The parties have different positions on whether the First Order is sufficiently final.

[7] In advancing arguments at this stage, the department does not abandon the positions it advanced in connection with the First Order.

taxpayers argue that the case law establishes a constructional rule that legislation is presumed to operate prospectively only unless a clear intent to authorize retrospective application is found.

■ As has been recently noted, whether a law or rule can be said to have retroactive effect is a complex question. *U.S. Bancorp v. Dept. of Rev.*, 337 Or 625, 637, 103 P3d 85 (2004) (citing *Whipple v. Houser*, 291 Or 475, 488-89, 632 P2d 782 (1981) (Linde, J., concurring)). Although the default construction is prospective application only, a law will be applied retroactively if that is the intent of the legislature. *Joseph v. Lowery*, 261 Or 545, 547, 495 P2d 273 (1972) (citing *Reynolds Metals Co. v. Tax Comm'n*, 245 Or 156, 160-61, 421 P2d 379 (1966)). In this case, even if the 2003 Amendment is considered retroactive in character, it is so only because it permits assessments for a limited number of past years. That the statute has some retrospective reach is a clear expression of legislative intent. The only way that taxpayers' position could be given effect would be to conclude that the omitted property authority granted in the 2003 Amendment would not come into force until five years after adoption of the legislation. At that point, the maximum backward reach of the department would, viewed from the perspective of 2003, be prospective only. If that was what the legislature intended, however, it could and would have provided for a future effective date of the legislation. The legislature did not do so. The court concludes that the legislature intended precisely what occurred here, assessments occurring after November 26, 2003, could add property omitted from assessment in any of the five previous years.[8]

## V.   CONCLUSION

Based on the foregoing, the court concludes that the 2003 Amendment authorized the department to issue the 2004 Omitted Property Assessments. Now, therefore,

---

[8] Liability for tax will be triggered, however, only by an assessment made under the authority of the 2003 Amendment. Hence, until the department made that assessment in its regular statutory cycle in 2004 it made no such "claim." This answers the taxpayers' objection that the department should have asserted such a "claim" in the pending litigation regarding the 2001 Omitted Property Assessments.

IT IS ORDERED that Defendant's Third Cross Motion for Partial Summary Judgment is granted;

IT IS FURTHER ORDERED that Plaintiff Public Utility District No. 1 of Snohomish County, Washington's Motion for Partial Summary Judgment is denied; and

IT IS FURTHER ORDERED that Plaintiffs' Second Joint Motion for Summary Judgment of City of Seattle and City of Tacoma is denied.

# APPENDIX A

Oregon Laws 2003, chapter 31:

"**SECTION 1.** ORS 308.590 is amended to read:

"308.590. (1)   The Director of the Department of Revenue shall:

"(a)   Review, examine and correct the assessment roll made pursuant to ORS 308.515 on behalf of the Department of Revenue.

"(b)   Increase or reduce the valuation of property therein assessed so that the valuation is the assessed value of the property.

"(c)   Assess omitted taxable property by it assessable, in the manner provided in subsection (3) of this section.

"(d)   Correct errors in apportionments of assessments therein.

"(e)   Correct errors in the ratio of average maximum assessed value to average real market value calculated under ORS 308.153.

"(2)   If it appears to the director that there is any real or personal property which, by law, the department is permitted to assess, which has been by it assessed twice, or incorrectly assessed as to description, quantity or quality, or assessed in the name of a person or company not the owner, lessee or occupant thereof, or assessed under or beyond the actual assessed value thereof, or which is not assessable by the department but which has been assessed by it, the director may make proper corrections of the roll.

"(3)   If it appears to the director that any real or personal property which is assessable by the department has not been assessed upon the assessment roll, **or on any assessment roll for a year not exceeding five years prior to the last roll certified**, the director shall assess such property at the assessed value thereof.

"(4)   The property assessable by the department within any county shall be apportioned by the department to

such county at its assessed value or at the percentage thereof finally adopted under ORS 309.203.

"**<u>SECTION 2.</u> This 2003 Act takes effect on the 91st day after the date on which the regular session of the Seventy-second Legislative Assembly adjourns sine die.**

"Approved by the Governor March 28, 2003

"Filed in the office of Secretary of State April 1, 2003

"Effective date November 26, 2003"