DECISION
Plaintiff appeals Defendant's addition of the real market value of onsite developments for two commercial properties owned by Plaintiff for the 2006-07 tax year. The matter is before the court on Plaintiff's Motion for Summary Judgment, filed June 17, 2008. Stipulated facts agreed to by both parties were submitted as part of Plaintiff's Motion for Summary Judgment. Oral argument was held in the Oregon Tax Court in Salem, Oregon, on August 28, 2008. Plaintiff was represented by Donald H. Grim, Attorney at Law, Greene Markley, P.C., Portland, Oregon. Defendant was represented by Kathleen J. Rastetter, Senior County Counsel, Clackamas County, Oregon. The matter is now ready for decision.
 I. STATEMENT OF FACTS
Plaintiff is the owner of the subject real property, an apartment complex known as Village at Main Street, Phase II and identified by Clackamas County Assessor records as Account 05003168 and Account 05008964. ((Ptf's Memo in Supp of Mot for Summ J (Memo), Stip Fact 1 at 1.) Defendant's appraiser made two physical inspections of the subject property. At the time of the first inspection, [1] both the underground and surface portions of the onsite *Page 2 
developments were "in existence [and] substantially complete" and were "an integral part of the Subject Property * * * prior to the construction of the buildings" which were approximately 25 percent complete. (Ptf's Memo, Stip Facts 10, 11, and 12 at 2, 3.) At the time of the second inspection on March 9, 2006, the underground and surface portions of the onsite developments were "in existence, substantially complete, and an integral part of the Subject Property." (Ptf's Memo, Stip Fact 14 at 3.) "The buildings on the Subject Property were under construction and approximately 40% complete" by March 9, 2006. (Id.)
Defendant subsequently realized that the real market value of the onsite developments was not on the tax roll. Two Omitted Property Notices (Notices) were issued to Plaintiff on September 27, 2007. The Notices stated Defendant's intent to add real market value in the amount of $913,420 to Account 05003168 and real market value in the amount of $115,257 to Account 05008964 for the 2006-07 tax year. (Ptf's Memo, Stip Facts 2, 3 at 1, 2.) The parties agree that the additional real market value is attributable to onsite developments on the subject property. (Id.) The onsite developments at issue include surface improvements of "streets, sidewalks, and street lights" and underground improvements of water and sewer lines," storm drains, electrical services and other utilities." (Ptf's Memo at 6.)
Plaintiff filed a timely appeal of Defendant's Notices. (Ptf's Memo, Stip Fact 5 at 2.) Plaintiff alleges that the onsite developments cannot be added as omitted property because Defendant is attempting to correct its undervaluation of the subject property, not correct an omission. (Ptf's Memo at 7.) Defendant contends that the real market value of the onsite developments may be added to the tax roll as omitted property under ORS 311.216. (Def's Resp to Ptf's Mot and Memo For Summ J (Response) at 10.) *Page 3 
The issue before the court is whether the failure to include the real market value of the subject property's onsite developments on the tax rolls in 2006-07 was an omission or an undervaluation.
 II. ANALYSIS
All real property within the state of Oregon is subject to property tax. ORS 307.030.[2] Real property includes both "[t]he land itself * * * [and] [a]ll buildings, structures, improvements, machinery, equipment or fixtures erected upon, above, or affixed to the land." ORS307.010(b)(A), (B). For property assessment purposes, the definition of land includes any "site development made to the land." ORS 307.010(a). "Site development" includes "fill, grading, leveling, underground utilities, underground utility connections and any other elements identified by rule of the Department of Revenue." ORS 307.010(a). By rule, the Department of Revenue defined site developments as "offsite developments" including "streets, curbs, sidewalks, street lighting, storm drains, and utility services such as electricity, water, gas, sewer and telephone lines," and onsite developments including "water supply systems, septic systems, utility connections, extension of utilities to any structure(s), retaining walls, landscaping, [and] graveled driveway area." OAR 150-307.010(2)(A).
Defendant alleges that onsite developments[3] are a "distinct category of the property's value" which for the subject property is a "missing component of the value of the land." (Def's Resp at 6, 9.) "Oregon law provides that within the category of real property, buildings, / / / *Page 4 
structures, and improvements are analyzed separately from land."Miller v. Dept. of Rev. (Miller), 16 OTR 4, 7 (2001). The law is clear. There is one category: real property. Real property includes but is not limited to land. Land by definition includes onsite developments. ORS307.010(1); OAR 150-307.010(1).
Each year, the value of all real and personal property is assessed and the value recorded on the tax roll. ORS 308.210(1). If the assessor discovers that real or personal property was left off of the tax roll, ORS 311.216 permits the omitted property's value to be added to the rolls retroactively. ORS 311.216 provides in pertinent part that "[w]henever the assessor discovers or receives credible information, or if the assessor has reason to believe that any real or personal property * * * has from any cause been omitted, in whole or in part, from assessment and taxation on the current assessment and tax rolls, or on any such rolls for any year or years not exceeding five years prior to the last certified roll, the assessor shall give notice as provided in ORS 311.219." Oregon case law creates an exception if the property missing from the tax roll existed at the time of the original inspection and was an integral part of property that was physically appraised.See West Foods v. Dept. of Rev. (West Foods), 10 OTR 7 (1985). Such property may not be added as omitted property under ORS 311.216.
Land is the issue of this appeal. Land is analyzed separately.Miller, 16 OTR at 7. The parties stipulate that at the time of both the 2005-06 and 2006-07 tax year inspections, the underground and surface portions of the onsite develeopments "were in existence, substantially complete, and an integral part of the Subject Property[.]" (Ptf's Memo, Stip Facts 12, 14 at 3.) The West Foods two-prong test is met; specifically, the onsite developments were in existence and an integral part of the land. Additionally, no evidence in the record shows that the onsite *Page 5 
developments were altered or added between the time of the two inspections and the time the error was discovered.[4] The onsite developments may not be added as omitted property under ORS 311.216.
Defendant raises three additional concerns. First, Defendant correctly states that after a taxpayer receives notice of the assessor's intent to assess omitted property under ORS 311.219, the taxpayer must "show cause, if any, why the property should not be added to the assessment and tax roll and assessed to such person." ORS 311.219. Defendant alleges that Plaintiff failed to "show cause." Id. After receipt of Defendant's Notices, "Plaintiff and defendant conferred in good faith to resolve their difference of opinion as to whether the defendant's actions were appropriate but they were unable to resolve their dispute." (Ptf's Memo, Stip Fact 4 at 2.) The statutory requirement "to show cause" does not require Defendant to agree with Plaintiff; it affords Plaintiff an opportunity to explain to Defendant why it disagrees with Defendant's determination. The parties stipulated that they met to discuss "their difference of opinion." (Id.) Plaintiff clearly met its burden. After the parties failed to reach an agreement, Plaintiff then exercised its right of appeal to this court.
Second, Defendant raises an issue previously addressed by this court in Miller: "The statute [ORS 311.216] has, for a very long time indicated that where a property has been omitted for any reason, it may be added to the assessment rolls in accordance with the statutory procedures." Miller, 16 OTR at 8. (Emphasis in original.) In keeping with the statutory purpose, this court held that improvements not in existence at the time of an appraisal (such as the improvement to existing structure in Marion County), or a structure added to the roll and then *Page 6 
inadvertently deleted (the barn in Miller), or a structure in existence but never added to the tax roll (the feeder barn in Cox[5]) can be added to the tax roll as omitted property. The court's holdings inMarion County, Miller, and Cox are not contrary to the court's holding in West Foods nor the court's decision in this case. The statute only allows the assessor to add omitted property.
In both West Foods and this case, the property at issue was not omitted; it was clearly undervalued. In West Foods, the subject property was a mushroom plant with growing beds that were part of the buildings. In concluding that the growing beds were not omitted property, the court stated:
 "The growing beds were an integral part of the growing rooms and were part of the real property. The growing rooms were valued and placed upon the assessment and tax rolls. The failure of the appraiser to include the beds in the growing rooms resulted in an undervaluation of the growing rooms and not an omission of any `buildings, structures or improvements' under the statute."
West Foods, 10 OTR at 11.
In the case before the court, the county appraiser valued the land and placed that value on the roll. By definition and the parties' stipulations, onsite developments are and were an integral part of the land. The county appraiser failed to include the value of onsite developments that existed at the time of the appraisals. The county appraiser "apparently just missed" the onsite developments, not once but twice. Marion County, 10 OTR at 269. Given the stipulated facts, applicable statutes, and case law, the onsite developments were undervalued. *Page 7 
Third, Defendant argues that, if the court grants Plaintiff's motion, a portion of the value of the property will not be taxed. Oregon's property tax system changed in 1997 when Measure 50 was passed.[6]
Prior to the changes, there was a relationship or link between real market value and assessed value. ORS 308.232 (1995). Under that system, when the real market value of a property increased, the assessed value would also increase. With the enactment of Measure 50, the link between real market value and assessed value was broken because assessed value is now based on the lesser of real market value or maximum assessed value.
Maximum assessed value is a statutory value based on 90 percent of the real market value of the property as of 1995 or the real market value at the time the property is added to the tax roll. For the onsite developments at issue, which were 100 percent complete in 2005, the maximum assessed value should have been calculated by multiplying the real market value of the property by a ratio of "the average maximum assessed value over the average real market value for the assessment year" of properties of the same class. ORS 308.153(1)(b); see also ORS308.149(3)(a). That ratio is commonly referred to as the "CPR." The law provides that for each successive year, the maximum assessed value in most cases will increase no more than three percent a year. Or Const, Art XI, § 11(1)(b); see also ORS 308.146(1).
The assessed value of a property is the lesser of its real market value or its maximum assessed value. The court stated:
 "Under Measure 50 and the statutes implementing it, there is no linkage between the RMV [real market value] and MAV [maximum assessed value]. Instead, each value is determined and one of the two, the lesser, becomes, in any given year, the assessed value (AV) for the property."
Gall v. Dept. of Rev., 17 OTR 268, 270 (2003). *Page 8 
Defendant's concern is that if the onsite developments are not included in the value initially placed on the tax roll, the maximum assessed value of the onsite developments will be understated in subsequent years. If the maximum assessed value of the property is less than the real market value and the value of the onsite developments is not reflected in the maximum assessed value, the onsite developments will not be taxed. Defendant's concern is legitimate. Even though the value of the onsite developments could be added in a subsequent year to real market value, maximum assessed value can only increase for certain changes such as new improvements or lot line adjustments. See ORS308.153, ORS 308.156, ORS 308.159, and ORS 308.425. This court previously concluded that statutes addressing omitted property are not applicable to cure an undervaluation. The required statutory change to achieve Defendant's objective must originate with the legislature, not the court.
Defendant raises one other argument, stating that "the County seeks to correct a mistake at law in assessing the value attributable to the onsite developments to the improvements rather than the land, by using ORS 311.205 and OAR 150-311.205(1)(b), to shift the value consistent with the directive of OAR 150-307.010(1)." (Def's Resp at 12.) Unfortunately, the stipulated facts of the case do not support Defendant's assertion. Defendant issued an "Omitted Property Notice," stating that "the Site Development was omitted" and citing ORS 311.219, not ORS 311.205. (Jt Ex 1.) Defendant did not inform Plaintiff that it incorrectly placed the onsite development value on the improvements and it was now transferring that value from improvements to land which is allowed by ORS 311.205(1)(a). There is nothing in the stipulated facts to support Defendant's assertion. *Page 9 
 III. CONCLUSION
An assessor may not add property as omitted property under ORS 311.216
if it was (1) in existence at the time of the original inspection and (2) an integral part of the originally assessed property. WestFoods, 10 OTR at 11; Marion County, 10 OTR at 270; and Miller,16 OTR at 6. In this case, the onsite developments may not be added to the tax roll as omitted property under ORS 311.216 because they were in existence at the time of Defendant's two inspections and an integral part of the land. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's Motion for Summary Judgment is granted.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onOctober 28, 2008. The Court filed and entered this document on October28, 2008.
[1] The exact date of the first inspection is not given in the record.
[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2005.
[3] Defendant's term "onsite developments" is a shorthand term that encompasses both the subject property's offsite developments and onsite developments.
[4] The court held "that where such improvements are added to or made a part of other property after the other property has been physically appraised and are later discovered by the assessor, they may be subject to taxation as omitted property * * *." Marion County Assessor v. Dept.of Rev., 10 OTR 265, 270 (1986) (emphasis in original).
[5] John Cox and Donna M. Cox v. Jackson County Assessor (Cox), TC-MD No 050945A. In Cox, the court held that a feeder barn which was a stand alone structure built in 1994 and 1995 could be added to the 2004-05 tax roll as omitted property.
[6] Measure 50 was codified at Article XI, section 11, of the Oregon Constitution. *Page 1